# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00445-CV

**Mary Ayala, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-FM-08-006383, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Mary Ayala appeals from the decree terminating her parental rights to her daughter S.A., who was one and one-half years old at the time of the final hearing. The Department took custody of S.A. three days after she was born. The Department removed S.A. from Ayala's care because her four older siblings had been removed from Ayala's care due to domestic violence and unclean living conditions. At trial, the jury found that termination was in S.A.'s best interest and that Ayala had a mental or emotional illness or deficiency that made her an unfit parent, had her parental rights to other children terminated in the past, and had engaged in conduct or placed S.A. with people who engaged in conduct that endangered S.A.'s well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E), (M) (West Supp. 2012), § 161.003(a) (West 2008).

In September 2007, Ayala's four older children were removed from her care after several allegations of neglect of the children and domestic violence between Ayala and her

boyfriend, some of which were witnessed by the children. Further, the family's home was unsafe: the electricity was cut off, there was no running water, the house was dirty and infested with roaches, the children had repeated lice infestations, and there was very little food in the house. S.A.'s siblings exhibited learning delays and emotional problems at the time of their removal. Ayala's parental rights to her four oldest children were terminated in early 2009.

S.A. was born in December 2008. Shortly after she was born, the Department took custody of her, placing her with her current foster parents, the Acevedos, when she was about two months old. The Department placed her three oldest siblings with the Acevedos about a month later.[1] At the time of trial, the Acevedos were in the process of adopting the older children, and they planned to adopt S.A. if Ayala's rights were terminated. Erin Acevedo, S.A.'s foster mother, testified that S.A. was thriving, healthy, and very bonded to her, her husband, and her siblings. S.A. was not displaying developmental delays or problems. Acevedo testified that she believed Ayala did not have the ability to be an adequate parent because S.A. sometimes returned from extended visitations with Ayala with diaper rashes and yeast infections, Ayala once allowed S.A. to be driven in a car while she was not restrained in a car seat, and Ayala may have improperly administered antibiotics to S.A. Several other witnesses testified that S.A. was extremely bonded to the Acevedos and her siblings and that it would not be in her best interest to remove her from their home, where she had lived since she was several days old.

---

[1] S.A.'s other older sibling, J.J., was born with health problems and placed in a different foster home. He and his siblings spend time together and have built relationships despite being placed in separate homes.

A psychologist testified that Ayala's IQ was in "the mildly retarded range," that she suffered from "adjustment disorder with anxiety and depression" and a "personality disorder" with "histrionic and narcissistic and obsessive-compulsive feature," and that she had "significantly impaired social knowledge and judgment." Her low IQ and other cognitive deficiencies concerned him because she might not realize that a situation could be dangerous for S.A. and could result in impulsive or unstable behavior. A Department caseworker testified that she believed Ayala had, during the pendency of the case, exposed S.A. to people who might endanger her. She explained that Ayala had allowed her mother and sister to be with S.A. and said both women have histories with the Department and "have shown a pattern of endangering behavior." She also testified that Ayala endangered S.A. because she once allowed S.A. to be transported in a car without a car seat and had "an inability to follow medication directions, which could have had a very serious effect" on S.A.

Ayala testified about the efforts she had made since her children were removed from her care, including therapy, working on her cognitive abilities, finding appropriate housing and employment, taking parenting classes, and learning about domestic violence. She also testified that she had her tubes tied so that she could focus her attention on S.A. S.A.'s guardian ad litem, who was a volunteer with CASA, testified that she believed S.A. should be returned to Ayala's care because CASA "believed that being raised by a biological family carries some weight" and because Ayala had made progress during her most recent involvement with the Department. Ayala's therapist testified that Ayala was discharged from therapy several months before trial because she had successfully met her treatment goals. The therapist said, "I see her as a much stronger, responsible, capable woman today than when I first met her." Several other witnesses also testified

3

that they had been involved or acquainted with Ayala and that they believed she could be a good mother to S.A., that S.A. was bonded to Ayala, and that S.A. should retain her parental rights to S.A.

On appeal, Ayala's appellate attorney filed a brief stating that after reviewing the record, he believes that the appeal is frivolous.[2]  Counsel has presented a professional evaluation of the record and explained why he believes there are no arguable grounds for reversal.  Ayala has not filed a pro se brief or made contact with this Court.  We have conducted our own review of the record and observed no procedural problems to support reversal, nor does the state of the evidence lead to a conclusion that the jury erred in determining that Ayala's rights should be terminated.  We agree with counsel that the appeal is frivolous.  We therefore affirm the trial court's final decree. We grant counsel's motion to withdraw as attorney of record.

_____

David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   August 9, 2012

---

[2]  This and other Texas courts have held that it is appropriate in a parental termination case to file a brief asserting that the appeal is frivolous.  *See, e.g., Matthews v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-04-00184-CV, 2005 Tex. App. LEXIS 1231, at *2 (Tex. App.—Austin Feb. 17, 2005, no pet.) (mem. op.); *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *In re K.D.*, 127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.).